18-1-0-1-3, In Re A.H.C.S., Inc. 18-1-0-1-3, In Re A.H.C.S., Inc. I'm ready. Good morning, Your Honors. My name is James Knowlton. I represent A.H.C.S., Inc. in their application for a trademark for Gwen's. You should have given us some menus. As a foodie, I was curious. Well, I've been to Snowmass every year, so I confess up front that I actually know the restaurant. That being said, what's wrong with what the TTAB did here? For example, I mean, almost all of these underlying issues that you're raising are substantial evidence review issues for us. So while maybe I would think Gwen's and Gwen's Lodge would potentially have a different appearance or a different sound, I don't get to make that decision in the first instance. That's a substantial evidence review question. And the PTO said Lodge is generic, basically. It's just descriptive. And so it basically comes down to Gwen's and Gwen's. Well, that's kind of hard to get around at that point. So I guess my problem is you've made a lot of points, but so many of them, like similarity of the marks, all devolve into something that we review for substantial evidence. And whether I would have decided that issue the same way in the first instance isn't the issue I get to decide. It's is there evidence that supports how the PTO decided it. So what would you like to tell me in response to that? Are there particular ones you really think there's no substantial evidence for? Because you kind of walked through all of them and claimed there was basically no substantial evidence for any of them. But that doesn't feel right to me. So why don't you direct me to the one you think is worst? I mean, the ultimate issue is one of law, but you didn't spend as much time on that as you did on each little individual thing. And let me just interject while you're talking about that. You did both sides agree that Lodge was generic, right? Yes. Yeah. And it was disclaimed. Yeah. Yes, I understand that the default here is that their argument is equal to our argument that the names are not similar or that the services are not the same and that we lose. I understand that. So my argument is their argument is not what a reasonable person would believe to constitute likelihood of confusion. And the reason I make that argument is I go back to DuPont, Judge Markey. I mean, I love that case. And they give the courts and PTO the way to review trademarks. Well, likelihood of confusion is the question of law. So, I mean, I'm not surprised you'd want to pull us in that direction because that's a lot better for you than the substantial evidence one. But there are a whole bunch of factors that have been articulated, the DuPont factors, that ought to be utilized in coming up with your likelihood of confusion determination. And the problem is that the PTO found that almost all of those factors went against you. So how do you take a big picture look and say, well, even though all the individual factors you're supposed to look at way against you, nonetheless, there is no likelihood of confusion. How do we do that? See, I don't agree that they weigh in my favor. I believe that the law is on the substantial evidence is that when you look at similarity of marks, you look at the you compare the marks based on their appearance, their sound, their connotation, and their commercial impression. I give it to the PTO that Gwen's and Gwen's sounds alike. But when you look at the entirety of Gwen's Lodge, which is the language right out of DuPont entirety, that it and there are many cases in Ray Choose. That looked at the disclaimed word lodge because it is descriptive. It describes what the services is. So, and you go right back to the Lanham Act, and it says, so resembles a mark that in connection to the goods that it is related to is likely to cause confusion. In connection with the goods, Gwen's Lodge says it's a Gwen's Lodge. Looking at the similarity of services. The services, it says in DuPont, look at the registration and the application. It says in the registration, restaurant services, in the app, in the registration, it says resort lodge services. On the face, it is different. Absolutely different. How can the PTO all of a sudden jump into third party registrations? There's 12 of them. How can they jump into third page, eight web pages to show that there's, they're somehow related? Ipso facto, doesn't a resort lodge serve food? Say what? Excuse me. Ipso facto, doesn't a resort lodge serve food? No. I don't believe that is true. There are lodges that have restaurants. There are lodges that don't have restaurants. Resort lodge. Resort lodge. There are resort lodges. A place to which persons resort. And there are a lot of different types of resorts. They need to eat, do they not? That is correct. Resort lodges, that's correct. But there are a lot of restaurants that are not associated with lodges. I accept that, but now we're drawing Venn diagrams and there's an overlap. I'm waving my hands in circles. Yes, no, I understand that. And, you know, I appreciate this discourse, the opportunity to talk to you. It's a little more friendlier than I was expecting. And resort lodges, but then we get back to trade channels. Because the people looking for resort lodges are not looking for restaurants and people looking for restaurants. I didn't know that. What basis do you have for saying that? Maybe people go there because they want to eat the food. Oh, come on, Evan. How many hotels have good food? Well, then, yeah. The ones where I go. So that brings up the point. It's purely conjectural. It's the same as the examining attorney. I understand they're doing their job. I understand they've got a book that they read. And they follow this. And I'm saying, looking at the law, coming from Colorado and having the opportunity to argue this, I read the law and I take it for face value. It's the plain language. And Judge Markey says we don't want the discretion, the conjecture, whether it's this or that, to determine whether or not a trademark is given. I think that is wrong. And I think that's why we've fought so hard for this. Because Gwens is a genuine, legitimate mark. It is entitled to a trademark status. There is no confusion. If you look at the words Gwens and Gwens Lodge, any person would confuse that with Gwens Lodge, the services. I get pillaged in Pelley's brief for not maybe being smart enough to understand these laws. But as I understand it, a reasonable person, from which is how you judge likelihood of confusion, is whether or not a person is going to believe that Gwens Restaurant is associated with Gwens Lodge. Or that Gwens Lodge is associated with Gwens Restaurant. I think a reasonable person would say no. Confused. Confused. That is, yes, likelihood. Likely to be confused. So that's to your question. I believe that we have a strong case for a trademark approval. And I don't believe that the TTAB and the PTO have an argument that is equal to or has the same parity as our argument based on the plain language of the law and actually comparing Gwens with Gwens Lodge. Why don't we hear from the other side? Yes, I will. Can I ask one more question before? Do you mind? So have you ever thought about when I read this PTO decision, even if it needed to be affirmed, which I haven't made a decision yet. I'm waiting to hear all the arguments. But even if it did, have you thought about advising your client that they could seek a narrower registration? Because your client has been operating a restaurant for 30 years on a ski mountain in Colorado. I don't see any evidence that they're looking to expand. They've done this for 30 years and they have one location. Am I right? Correct. Okay. And the other people have this Gwens place in Alaska. And they've had one location and it's been there for 30 plus years as well. These two things have never crossed paths in any way, shape, or form. One of the things the PTO has said is, yeah, but they could. And it's true because when you seek a broad registration, not a narrow registration, it's possible that you might decide to now open up a Gwens in Alaska right next door. Right? And that's the problem. The concern isn't what you're each doing in the respective markets you're in now and have been doing for the last 30 years. But if you ask for a broad registration, the concern is you could then literally open a restaurant next door to that other hotel. And boy, the facts would look really different. But you'd have the right to do it if they granted your registration. So has your client considered the possibility of a much narrower request in terms of categorizing the services, for example? Very good question. I asked her this morning in the cafeteria, Gwen, and I asked her that. And we decided no. We want the general. The general protection is what Gwens Lodge has. But even if you – okay, but they haven't sought to expand into your market so far, right? Yes. So even if you do – and I don't know if they could because it would depend on who started first. You know that. There are common law trademark rights that they both possess. Right. So it may well be that they can't, especially after this decision with likelihood of confusion. If you all used it first, they might not actually be able to open an establishment near you because you have a geographic monopoly on that space if you started using it first. But in any event, no matter how this case turns out, that is something you could consider doing if it doesn't turn out in your favor, filing a new registration that is much narrower in scope and you'd have a whole other bite at the apple. Yes. Very good. I'm just giving you completely unsolicited advice. Thank you. I am most appreciative and I will give up the slides too. Good morning, Your Honors. May it please the Court. I just wanted to address one thing that counsel said in his presentation. He said that resort lodges don't serve food. And that's contrary to things that were said in the record by his client. I just wanted to point out where those were. First of all, on the relationship between the services, they said that the PTO, and I'm quoting now, the PTO is correct in stating that from its evidence, resort lodging and restaurant services are of a kind that may emanate from a single source under a single mark. That's at Appendix 152. But wait, are we talking about several? Sure, there are resorts that have restaurants, but isn't it at least as likely, if not more likely, that the restaurants would have their own independent name and be operated by another entity other than the person who's got the lodge? There is evidence, of course, obviously. And if that's true, that wouldn't be the same coverage, right?  That's not exactly what we're saying here. What we're saying is that lodge services and restaurant services are related in the sense that people are accustomed to seeing the two offered together under the same mark. And as a result, if they see the Gwen's Restaurant, that will raise the question, you have to assume that they've seen Gwen's Lodge mark before that, that will raise the question in their mind whether there's a relationship between the two. So there's not really the question. I didn't see that the PTO found, unless I'm mistaken, that people are accustomed. I think they introduced a few examples of lodges with restaurants bearing similar names and therefore concluded they could be looked at as related services. But you just said something far stronger than that. And remind me, did the PTO actually hold what you said, which is people are accustomed to seeing resorts with restaurants of the same name and that that's what this record has established? They didn't use the word accustomed, Your Honor. Because that sounds like almost routine. Because I tell you, I'm not accustomed to that. I've pretty well traveled. And I very seldom have come across a hotel where the restaurant bears the same. Hilton Restaurant doesn't sound that appealing to me. You know? I mean, very seldom do I come across a hotel where it doesn't have, as our Chief Judge pointed out, its own brand name, even if it happens to be owned by the same source, ultimately. Now, on the record in this case, there are 11 third-party registrations of entities that offer both resort lodging and restaurant services under the same mark. And there's also evidence of third-party websites, eight of them, of companies that offer resort lodging and restaurant services under the same mark. That's what the record is in this case. And I think they may have put in four stand-alone restaurants, including their own. But what that shows is that substantial evidence shows or supports the notion that these goods and services are related. And the test is, in fact, very similar to what they admitted. Can I ask you something? This is just a really technical, basic question. Sure. When these searches are done, are you looking for both sides of this? I mean, does somebody go in and say, okay, we're looking for how many lodges and restaurants have the same name? Did somebody look for how many didn't? Is there any record evidence there by the examiner about how many? I mean, you gave us the number of how many did. What about how many didn't? Generally, what the examining attorneys do, and I can't speak for all of them in every instance, but generally what they do is if they see that there might be a Why is it meaningful, just hypothetically? Why is it meaningful, even if you found 300 that have the similarity, if on the other hand there are 400,000 that don't? Don't you need both numbers on that scale in order to assess it? Well, we do assess that. And under this Court's Coors decision from 15 years ago, if there were evidence that showed that there was so much overwhelming evidence that people would not make that assumption, then we would certainly consider that. But that's not the record in this case. In this case, there are the 11 registrations and the eight websites and just four, I think, stand-alone restaurants. And so under the Substantial Evidence Review, that's enough to support what we're doing. It's really incumbent on the examining attorney just to give them a factual predicate for what it is that they're thinking might be the objection and give them an opportunity to come back, as the Coors people did, and say, yes, you found a few things, but overwhelmingly that's not the case in the market. And that's not what the record here shows. In the red brief at 23, you say, although AHCS highlights that at present its restaurant is on a mountain in Colorado and the registrant's lodged restaurant is in Alaska, and presumably not on one of the state's many mountains. Did you look? Is that in the record? I mean, is it on a mountain or isn't it? I'm just curious. From the website that was in the record, it didn't look like it was on a mountain. They were describing it. I don't know. I mean, that's not a place I've stomped around. But would it alter the analysis since you assert that neither the application nor registration is restricted to any market area? With the overall legal question, no, it wouldn't alter the case at all. I just wanted to highlight that, as Judge Moore pointed out in the co-counsel's presentation, there are ways that they could get their registration. They could go to the people at Gwen's Lodge and seek a consent, which would explain to us why they don't think, because they're familiar with their businesses, that they don't think there's going to be a likelihood of confusion. They may even want to seek an arrangement where Gwen's Lodge modifies their mark, perhaps, almost like an agreed concurrent use proceeding, to say, okay, we'll stay in the Pacific Northwest and you can have the Rockies. Okay, that all sounds nice. Yes. But that's all contingent upon the other side agreeing to something. Exactly, exactly. In other words, this is not necessarily the last step for them, but this is something that they could seek if they really wanted to get a federal registration. Well, just to be clear, they've sought a federal registration, but you haven't asserted your trademark against them, correct? You haven't suggested that they should discontinue use of their trademark because of yours. Well, we're representing the PTO, so we're not, you know, we don't have any dog in this fight, really. We're just trying to enforce the statutes. I thought you were, for some reason I had in my head that you were representing the Alaska Gwen's. Yes. But I just wanted to point out that, as you had said, there are ways for them, perhaps, if they can get the agreement of the other side, to get a registration that will suit their business needs. Okay. If there are no further questions, I'll give that panelist my time. Thank you. Thank you. Do you know the answer to that? Is the one in Alaska on a mountain? It is not. It is basically a fishing resort. So it's on a lake or something? Yeah, it's on a highway, middle of nowhere, as far as I can tell on the map. I'm from the middle of nowhere, pal. Yeah, I feel like sometimes, too. Just to respond, number one, we really want the trademark. And we did, I did, call Gwen's Lodge and ask them. And I talked to Robert Keenum, I think is the owner. His wife is a patent attorney in Houston, trademark attorney. Okay, so this is all outside of the record. It's off the record. I tried it. It didn't work. Next thing. It's the, as I understand, it is the PTO's trademark, patent and trademark's office's burden to prove that there's a likelihood of confusion. And I don't believe that they have. They have cited 12 third-party registrations and eight webpages to prove that. Well, how much is enough? I mean, their view of that is that you come up with four that don't. Maybe if you had come up with 14 that don't, that would have been a different story. Yes. And to that point, in recourse, I didn't articulate it as well as I could have. But the point is, is they denied trademark. No, they have granted trademark to Blue Moon Beer because it didn't conflict with Blue Moon restaurants because there was over 815,000 restaurants versus 1,500 brew pubs. Well, if I extrapolate that there are 815,000 restaurants out there, then 12 third-party registrations and eight webpages is not enough to go against the number of restaurants that are not affiliated with the resort. Where did you make that argument? You know, I didn't. I tried. I didn't. I made it in the, when we're talking about third-party registrations not having enough, they're not used. You argued wait, but you didn't argue that. No, I did not. That's what I said. But I put the words in 800 versus 1,200, and that's why, because there's so many restaurants. I didn't make that. Can I ask you a question? I want to go through the evidence with you. The 12 third-party registrations that the PTO cites for the relatedness of the services being sought for, what are those? Can you point them out to me in the record, or can you at least tell me about them? What is it that the PTO is saying is the substantial evidence for the relatedness? I guess one of the things I'm wondering is, were those registrations where the person sought the identical mark for both restaurant lodge services and, restaurant services and lodge services? I'm trying to understand what those 12 third-party registrations that supposedly show relatedness look like. Yes, and I have all that evidence on my computer because it's just easier to access it. But you're right. As I recall, the third-party registrations merely reflect that there are restaurants and lodges services combined for a trademark. Meaning, let me give you an example. When somebody files a trademark application, in your case, you sought it for just one type of goods. Correct. Restaurants, period. McDonald's, food services, t-shirts, whatever. They seek a registration for lots of disparate categories of goods. Just because all those goods are listed with a bunch of commas next to them doesn't make them related goods. So what I'm trying to understand is exactly what these 12 things looked like that the PTO said demonstrated relatedness. Because you can seek a registration for lots of goods that are not related to each other at all. And just because one registration is sought for all of them doesn't mean they're related. In fact, the fact that they're separately listed might actually suggest even that they might not be. So I guess I'm going to, as a matter of law, whether that particular evidence can actually be utilized to prove the case in this. This is a very friendly question. Yeah, I understand that. And I totally agree. I don't even know why they even went there. All you have to do is go to the application registration. That tells you what the services are. So can you show me what these 12 pieces of evidence look like, where they are in the record? PTO attorney, if you know where they are in the record, you can point me to the page number. I have my physical compilation. Do you have an appendix number? Okay. What's the appendix? Did we get the appendix site? Yeah. Three? Yeah. Yeah. Pro counsel has helped me out on this. On page three of their brief, beginning on page three. Yeah. They say appendix page 83. Also, you can actually see them on that. Appendix page 83? Yes. I think that's where we're going. Yeah. See, these all say, page 83, appendix, resort lodge, semicolon, restaurant services. Yeah. Resort, restaurant services, semicolon, resort lodge. So these are, I mean, actually some of them go a lot further, right? They're then less conference and exhibition halls, banquet facilities and special occasions. Yeah. Were they actually listed in their application, which I assume became registration? Which Gwyn's Lodge didn't do that. Gwyn's Lodge didn't list it, did it? No. No? They did not list a restaurant. They just said resort lodge services. So does that mean if the PTO's logic were to hold that these 12 proved this, wouldn't it also mean if McDonald's, for its golden arches, said, you know, fast food services, semicolon, t-shirts, the PTO would be justified in saying t-shirts and fast food are related? Logically, wouldn't that be the extension of their argument today? No, I think it depends on, I guess, what they're comparing it to. And my argument is, yeah, restaurant services is different than resort lodge services for the purposes of the confusion. And likelihood of confusion. But going to your point as far as substantial evidence, 12 does not prove that consumers. Now, what do the eight websites look like? Do you know where those are? Yes. Yes. They're the family lodge. Yeah, I remember seeing that in the appendix, actually. That's in the 50s somewhere. 48 is Cascade Restaurant and Pub. Yeah. So basically, they just looked for any website that listed a restaurant and a hotel. Basically, page 47 is the Cascade Lodge, and then 48 is a link on the Cascade Lodge page to the Cascade Restaurant and Pub. So they pulled out eight webpages where it was hotels that also happened to have restaurants that bore similar names. Is that what those eight pieces of evidence look like? Yes. They're webpages that show that there is a lodge with a restaurant. Okay, but let me just stick with my example for a minute. Suppose on the McDonald's website, there was a link that said, and you can buy other McDonald's paraphernalia. And you jumped on that link to a separate part of the McDonald's website where you could buy T-shirts or footballs with the golden arches on them or anything else. Would that prove that the goods are related just because they all happen to be sold together on a single website? No. Well, I don't know. I'll have to think about this one. Yeah. Well, I mean, the cases that look at relatedness, it depends on whether or not the names are similar. Okay, but you don't win on the similarity of the names. Okay. Okay. So I don't know if I've exceeded my time. Yeah. Thank you. Thank both sides. My case is submitted.